UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| In re WESTERN REFINING, INC. STOCKHOLDER LITIGATION<br><br>_____<br><br>This Document Relates To:<br>ALL ACTIONS | LEAD CASE No. 3:17-cv-00002-DCG<br><br>CLASS ACTION |

**OPPOSED MOTION AND MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOOTNESS APPLICATION FOR AN AWARD OF
<u>ATTORNEYS' FEES AND EXPENSES</u>**

## TABLE OF CONTENTS

I.     BACKGROUND .................................................................................................1

II.    LAW AND ARGUMENT .................................................................................4

       A.     Plaintiffs' Counsel Are Entitled to Attorneys' Fees and Expenses ........................4

       B.     A Substantial Benefit Was Conferred Upon Western Stockholders .....................7

              1.     The Supplemental Disclosures Benefited Stockholders .............................7

              2.     Supplemental Disclosures Corrected the Forecasts ...................................9

              3.     Supplemental Disclosures Regarding Barclays' Market Valuations .........13

              4.     The Supplemental Disclosures Explained the Sales Process ...................16

       C.     The Requested Fee and Expense Are Reasonable .................................................18

              1.     Plaintiffs' Counsel's Lodestar Support the Requested Fee ......................19

              2.     Fee Awards in Similar Cases ....................................................................21

III.   CONCLUSION ...............................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*In re 3Com S'holders Litig.*,
   No. 5067-CC, 2009 Del. Ch. LEXIS 215 (Del. Ch. Dec. 18, 2009) ......................................17

*In re Appraisal of the Orchard Enters., Inc.*,
   No. 5713-CS, 2012 Del. Ch. LEXIS 165 (Del. Ch. July 18, 2012)..................................15, 16

*Barton v. Drummond Co.*,
   636 F.2d 978 (5th Cir. 1981) ...........................................................................................4, 5

*Biver v. Nicholas Fin., Inc.*,
   No. 8:14-cv-250-T-33TGW, 2014 U.S. Dist. LEXIS 73933 (M.D. Fla. May 30, 2014)........13

*Brown v. Brewer*,
   No. CV 06-3731-GHK, 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010) .................9

*Call4U, Ltd. v. Goodman Global, Inc.*,
   No. 2007-66888,
   Final J. and Order of Dismissal with Prejudice (Tex. Dist. Harris Cty. May 13, 2009) .........20

*In re Clark Oil & Ref. Corp. Antitrust Litig.*,
   422 F. Supp. 503 (E.D. Wis. 1976) ..................................................................................6, 7

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................................20

*Collier v. BrightPoint, Inc.*,
   No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 62125 (S.D. Ind. May 1, 2013)..21, 22

*Cooke v. Equal Energy Ltd.*,
   No. 5:14-cv-00087-C, Fed. Court Order and Final J. (W.D. Okla. Apr. 8, 2015) .................22

*Cooperstock v. Pennwalt Corp.*,
   820 F. Supp. 921 (E.D. Pa. 1993)..........................................................................................4

*In re Countrywide Corp. S'holders Litig.*,
   No. 3464, 2009 Del. Ch. LEXIS 158 (Del. Ch. Aug. 28, 2009)..............................................7

*In re Covidien PLC Sec. Litig.*,
   No. 1:14-cv-12949-LTS, Order and Final J. (D. Mass. Sept. 23, 2015) ...............................22

*In re Crestwood Midstream Partners Unitholder Litig.*,
   No. 4:13-cv-01528, 2014 U.S. Dist. LEXIS 185018 (S.D. Tex. May 16, 2014) ...................22

*David P. Simonetti Rollover IRA v. Margolis*,
    No. 3694-VCN, 2008 Del. Ch. LEXIS 78 (Del. Ch. June 27, 2008) .....................................13

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007)..........................................................................................22

*In re Dell, Inc., Sec. Litig.*,
    No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281 (W.D. Tex. June 11, 2010) ...............19

*Dent v. Ramtron Int'l Corp.*,
    No. 7950-VCP, 2014 Del. Ch. LEXIS 110 (Del. Ch. June 30, 2014) ....................................16

*In re Dunkin' Donuts S'holders Litig.*,
    No. 10825, 1990 Del. Ch. LEXIS 197 (Del. Ch. Nov. 27, 1990)............................................5

*Fountain v. Avondale Indus., Inc.*,
    No. 95-1198, 1996 U.S. Dist. LEXIS 5045 (E.D. La. Apr. 18, 1996) .............................20, 21

*Garza v. Sporting Goods Props.*,
    No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996)......................21

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...............................................................................................................19

*Hollis v. Hill*,
    232 F.3d 460 (5th Cir. 2000) ....................................................................................................5

*In re Infinity Broad. Corp. S'holders Litig.*,
    802 A.2d 285 (Del. 2002)..........................................................................................................5

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964) ...............................................................................................................13

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ..................................................................................................18

*In re JP Morgan Chase & Co. Sec. Litig.*,
    MDL No. 1783, 2009 U.S. Dist. LEXIS 17196 (N.D. Ill. Mar. 3, 2009)................................7

*Kahan v. Rosenstiel*,
    424 F.2d 161 (3d Cir. 1970) .....................................................................................................6

*Lambert v. Tellabs, Inc.*,
    No. 1:13-cv-07945, Final Order and J. (N.D. Ill. Sept. 11, 2015)..........................................21

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
    148 F. Supp. 2d 1141 (D. Kan. 2001)......................................................................................6

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ..................................................................................5

*Malone v. Brincat*,
   722 A.2d 5 (Del. 1998)........................................................................................8

*Matador Capital Mgmt. Corp. v. BRC Holdings, Inc.*,
   729 A.2d 280 (Del. Ch. 1998) ...........................................................................17

*Meredith v. La. Fed'n of Teachers*,
   209 F.3d 398 (5th Cir. 2000) ...............................................................................4

*In re MetroCorp Bancshares S'holders Litig.*,
   No. 4:13-cv-03198, Order Approving Settlement and J. (S.D. Tex. Oct. 23, 2014)..............20

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ....................................................................................6, 7, 8

*Moore v. Verizon Commc'ns, Inc.*,
   No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609 (N.D. Cal. Feb. 5, 2013) ....................22

*In re Netsmart Techs., Inc. S'holders Litig.*,
   924 A.2d 171 (Del. Ch. 2007) .........................................................................8, 13

*Nichting v. DPL Inc.*,
   No. 3:11-cv-141, Order and Final J. (S.D. Ohio Feb. 24, 2012) ............................................21

*O'Neill v. Church's Fried Chicken, Inc.*,
   910 F.2d 263 (5th Cir. 1990) ...............................................................................4

*Philips v. Texas Indus., Inc.*,
   No. 3:14-cv-00740-B, Order and Final J. (N.D. Tex. June 10, 2015) ...................................20

*In re Plains Res. Inc. S'holders Litig.*,
   No. 071-N, 2005 Del. Ch. LEXIS 12 (Del. Ch. Feb. 4, 2005) ................................................19

*Pompano Beach Police & Firefighters' Ret. Sys. v. Odyssey Healthcare, Inc.*,
   No. CC-10-03561-E,
   Final J. and Order of Dismissal with Prejudice (Tex. Dist. Dallas Cty. May 18, 2012) .........20

*In re Pure Res., Inc., S'holders Litig.*,
   808 A.2d 421 (Del. Ch. 2002) .........................................................................8, 13

*Ryan ex rel. Maxim Integrated Prods. v. Gifford*,
   No. 2213-CC, 2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009) ............................................19

*In re Saba Software, Inc. Stockholder Litig.*,
   No. 10697-VCS, 2017 Del. Ch. LEXIS 52 (Del. Ch. Mar. 31, 2017)....................................18

*In re Sauer-Danfoss Inc. S'holders Litig.*,
    65 A.3d 1116 (Del. Ch. 2011) ................................................................7

*In re Schering-Plough/Merck Merger Litig.*,
    No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 26, 2010)..............5, 21

*Schulein v. Petroleum Dev. Corp.*,
    No. SACV 11-1891 AG (ANx), 2014 U.S. Dist. LEXIS 71236 (C.D. Cal. May 19, 2014).....9

*Shaw v. Toshiba Am. Info. Sys.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000)....................................................18

*Smith v. Robbins & Myers, Inc.*,
    969 F. Supp. 2d 850 (S.D. Ohio 2013) ..................................................15

*Swope v. Siegel-Robert, Inc.*,
    74 F. Supp. 2d 876 (E.D. Mo. 1999) ....................................................16

*In re Talley Indus., Inc. S'holders Litig.*,
    No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 9, 1998) ............................8, 9

*Tandycrafts, Inc. v. Initio Partners*,
    562 A.2d 1162 (Del. 1989) ................................................................5

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................20

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976) .......................................................................8

*Va. Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991) ......................................................................8

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995).......................................................20

*Will v. United States*,
    90 F.R.D. 336 (N.D. Ill. 1981) ...........................................................7

**Statutes**

15 U.S.C. § 78n(a) ............................................................................8

**Other Authorities**

17 C.F.R. § 244.100..........................................................................12

Mary Jo White,
   *Keynote Address, International Corporate Governance Network Annual Conference:*
   *Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP,*
   *and Sustainability* (June 27, 2016) ................................................................................12, 13

Robert Brelsford,
   *Tesoro, Western Refining shareholders approve proposed merger*,
   Oil & Gas Journal (Mar. 24, 2017)................................................................................2

Plaintiffs Srini Vasan, Brian Miller, Gene Love, and John Solak ("Plaintiffs"), through undersigned counsel, respectfully move this Court and submit this Motion and Memorandum in Support of Plaintiffs' Mootness Application for Attorneys' Fees and Expenses.  Plaintiffs' Counsel seek reasonable compensation for their efforts in this stockholder litigation, which efforts contributed to the issuance of corrective and supplemental disclosures described below ("Supplemental Disclosures") by Defendants (defined below) of material information in connection with the acquisition of Western Refining, Inc. ("Western" or the "Company") by Tesoro Corporation ("Tesoro").  The Western board of directors and its financial advisor relied on and utilized the Supplemental Disclosures to recommend and solicit stockholder votes in favor of the Transaction, and Plaintiffs alleged that the omission of this information from the solicitation materials was a violation of federal statutory and regulatory reporting requirements.

Plaintiffs have engaged Defendants regarding a reasonable fee for the efforts of Plaintiffs' Counsel, but have been unable to reach agreement.  Plaintiffs now move this Court to approve their Counsel's application for a fee and expense award of $300,000 ("Fee and Expense Award") on the grounds that Plaintiffs' Counsel's efforts contributed to the Defendants' disclosure of the Supplemental Disclosures to Western stockholders before the vote at the special meeting, which conveyed a benefit to stockholders.  As discussed below, this Fee and Expense Award is reasonable and warranted based on the relief obtained and time and expenses Plaintiffs' Counsel invested in this Action.

## I.   <u>BACKGROUND</u>

The Merger Agreement announced on November 17, 2016, provides that Western stockholders will exchange their Western shares for $37.30 cash per share ("Merger

Consideration"). ¶ 2.[1]  Western stockholders have the option to either receive 0.4350 shares of Tesoro or cash for each share of Western stock.  *Id.*  Elections to receive cash are subject to proration to the extent they exceed approximately 10.8 million shares (or approximately $404 million in the aggregate).  *Id.* Stock elections are not subject to proration ("Proposed Transaction").[2]  *Id.*

On December 14, 2016, in order to convince Western stockholders to vote in favor of the Proposed Transaction, the Western Board of Directors (the "Board") authorized the filing of a materially false and/or misleading S-4 Registration Statement with the Securities and Exchange Commission ("SEC") (the "Preliminary Proxy").  The Preliminary Proxy recommended and solicited Western stockholders to vote in favor of the Proposed Transaction and exchange their shares pursuant to the terms of the Merger Agreement, based among other things on misleading and omitted information that was relied on by the Board and the Company's financial advisor that rendered an opinion that the Proposed Transaction is fair to Western stockholders, Barclays Capital Inc. ("Barclays"). Specifically, Plaintiffs alleged that the Preliminary Proxy was false and/or misleading due to the omission of material information concerning the following: (i) the

---

[1]  Citations to "¶ __" are to paragraphs of the complaint filed in the *Miller* Action (the "Complaint") (defined below) filed in this Court on January 5, 2017.  Pursuant to a Stipulation and Order to Consolidate and Appoint Interim Lead Counsel for Plaintiffs entered by this Court on February 28, 2017, the Complaint was deemed operative.  ECF No. 8.  To the extent not otherwise defined herein, capitalized terms  shall have the same meaning as in the Complaint.

[2]  The Merger will be effected through Tesoro's affiliate Tahoe Merger Sub 1, Inc. ("Merger Sub 1") and Tahoe Merger Sub 2, LLC ("Merger Sub 2") (collectively, the "Merger Subs").  Under the Merger Agreement's terms, Merger Sub 1 will merge with and into Western, with Western surviving as a wholly owned subsidiary of Tesoro.  Western then will merge with and into Merger Sub 2, with Merger Sub 2 surviving as a wholly owned subsidiary of Tesoro.  Stockholders voted to approve the Transaction on March 24, 2017.  Robert Brelsford, *Tesoro, Western Refining shareholders approve proposed merger*, Oil & Gas Journal (Mar. 24, 2017), *available at* www.ogj.com/articles/2017/03/tesoro-western-refining-shareholders-approve-proposed-merger.html.  According to the most recent SEC filing, as of the date of this fee application, the Proposed Transaction is still under federal regulatory review and is expected to close in the first half of 2017.

Board's determination that no other alternative transaction would be available (¶¶ 57-56); (ii) projections produced by Western management that were relied on by the Board and used by Barclays, in support of their analyses (¶ 58); and (iii) the financial analysis performed by Barclays (¶¶ 59-60). *See also* Declaration of Thomas E. Bilek in Support of Application for an Award of Attorney Fees and Expenses ("Bilek Decl."), Ex. A ("Preliminary Proxy").

Accordingly, on January 4, 2017, Plaintiff, Srini Vasan, a stockholder of Western filed a putative stockholder class action on behalf of himself and all other similarly situated stockholders of Western against the Company and the Company's Board[3] for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Securities and Exchange Commission Rule 14a-9 promulgated thereunder ("Rule 14a-9"), in connection with their dissemination of the materially incomplete and misleading Preliminary Proxy.[4]

On February 17, 2017, Defendants filed the Schedule 14A Definitive Proxy Statement (the "Definitive Proxy") (attached as Exhibit B to the Bilek Declaration), which announced the special stockholder meeting on March 24, 2017, to vote on the Proposed Transaction and,

---

[3] The Board includes the "Individual Defendants", Paul L. Foster, Sigmund L. Cornelius, L. Frederick Francis, Robert J. Hassler, Brian J. Hogan, Jeff A. Stevens, and Scott D. Weaver. ¶¶ 12-18.

[4] *Vasan v. Foster, et al.*, No. 3:17-cv-00002 (the "*Vasan* Action"). The other actions that were commenced were the following: (i) *Miller v. Foster, et al.*, No. 3:17-cv-00004 (the "*Miller* Action"), (ii) *Love v. Foster, et al.*, No. 3:17-cv-00008 (the "*Love* Action"), (iii) *Shomberg v. Foster, et al.*, No. 3:17-cv-00014 (the "*Shomberg* Action"), (iv) *Solak v. Western Refining, Inc., et al.*, No. 3:17-cv-00020 (the "*Solak* Action") (collectively, the "Actions"). The Actions were consolidated by order of this Court on February 28, 2017. ECF No. 8.

reflecting the sufficient additional and corrective material information disclosed in prior amendments to the Preliminary Proxy, addressed Plaintiffs' allegations in the Complaint.[5]

Plaintiffs' Counsel now move for an award of attorneys' fees and expenses in connection with the dissemination of the Supplemental Disclosures.  In light of the materiality of the Supplemental Disclosures in the amendments to the Preliminary Proxy, and based on precedent awards of fees and expenses in similar cases, Plaintiffs' Counsel respectfully submit that they are entitled to an award of fees and expenses in the aggregate amount of $300,000.

## II.   LAW AND ARGUMENT

### A.   Plaintiffs' Counsel Are Entitled to Attorneys' Fees and Expenses

It is well-settled that attorneys may be awarded "fees from the corporation if they show that they have conferred a substantial benefit to the corporation through their efforts."  *O'Neill v. Church's Fried Chicken, Inc.*, 910 F.2d 263, 265 (5th Cir. 1990); *Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 406 (5th Cir. 2000); *see also Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 923 (E.D. Pa. 1993) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970), and *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir. 1970), *cert. denied*, *Glen Alden Corp. v. Kahan*, 398 U.S. 950 (1970), *superseded by statute on other grounds as stated in Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569, 576 (N.C. App. 2008)).

> Those cases which define "benefit" under the "common benefit" exception make clear that the recovery of fees  from the corporation is an appropriate

---

[5]  Tesoro made the equivalent filing on February 17, 2017.  Defendants filed amendments to the Preliminary Proxy on January 18, 2017, February 6, 2017, and February 14, 2017, which addressed certain of Plaintiffs' claims.  Specifically, the claims delineated in: (1) Sections (II)(B)(ii)(2)-(3) were mooted in the amendment filed on February 6, 2017 (the "February Disclosures"); and (2) Section (II)(B)(4) were mooted in the amendment filed on January 18, 2017 (the "January Disclosures").  Both the February Disclosures and the January Disclosures are faithfully reflected in the Definitive Proxy and are referred to collectively as the "Supplemental Disclosures" where applicable.

> means of spreading the cost of obtaining the benefit among all the
> shareholders even where no monetary fund has been created.

*Barton v. Drummond Co.*, 636 F.2d 978, 985 (5th Cir. 1981).

These principles apply even where the corporate benefit is entirely non-pecuniary, as the absence of "a specific monetary recovery does not prevent an award of attorneys' fees."  *See Maher v. Zapata Corp.*, 714 F.2d 436, 457 n.38 (5th Cir. 1983) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974), and *Mills*, 396 U.S. at 395-96).  *See Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989) (counsel entitled to reasonable fees and related expenses where efforts result in corporate benefit); *In re Dunkin' Donuts S'holders Litig.*, No. 10825, 1990 Del. Ch. LEXIS 197, at *9 (Del. Ch. Nov. 27, 1990) (when a tangible monetary benefit has not been conferred, "[i]t is enough . . . that the underlying litigation has 'specifically and substantially' benefited the class").[6]  Under the common benefit doctrine, "'the vindication of the class' rights . . . is the common benefit conferred on the class that justifies the award of attorneys' fees.'"  *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *18 (D.N.J. Mar. 26, 2010) (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 983 (3d Cir. 1983)).  The substantial benefits need not flow solely from this action for counsel to be entitled to recover an award of attorneys' fees and expenses. *See In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 290 (Del. 2002) (even though shareholder litigation was only a partial cause of a benefit, "counsel applying for attorneys' fees do not need to show that they were the sole cause of a benefit conferred by settlement in order to have earned a fair, adequate and reasonable fee for their work on behalf of the class").

---

[6]  Texas federal courts have recognized that "Delaware courts are often influential in matters of corporate law . . . ."  *See Hollis v. Hill*, 232 F.3d 460, 469 (5th Cir. 2000).

In fact, the benefit doctrine is applicable in the context of class and shareholder derivative actions that have conferred a substantial non-monetary benefit, even when there is no ascertainable fund from which attorneys' fees can be paid.  *See Mills*, 396 U.S. at 392 (finding, in a Section 14(a) action like this that "[t]he fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale."); *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149-50 (D. Kan. 2001) ("Monetary damages [could not] restore the right of shareholders to effectively exercise their corporate suffrage rights."); *Kahan*, 424 F.2d 161, 166 (3d Cir. 1970) ("In *Mills*, the Supreme Court clearly extended the circumstances in which the award of attorney's fees is appropriate to situations where the suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid."), *cert. denied*, *Glen Alden Corp. v. Kahan*, 398 U.S. 950 (1970), *superseded by statute on other grounds as stated in Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569, 576 (N.C. App. 2008)) (internal quotation marks omitted);[7] *see also In re Clark Oil & Ref. Corp. Antitrust Litig.*, 422 F. Supp. 503, 511 (E.D. Wis.

---

[7]  The Supreme Court explained its reasoning in *Mills*:

> In many suits under § 14(a), particularly where the violation does not relate to the terms of the transaction for which proxies are solicited, it may be impossible to assign monetary value to the benefit.  Nevertheless, the stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders.
>
> * * *
>
> [R]egardless of the relief granted, private stockholders' actions of this sort "involve corporate therapeutics," and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute.  To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit.

*(cont'd)*

1976) ("Although these nonmonetary provisions are not susceptible of valuation in conventional terms, the Court is convinced that they confer real and substantial benefits upon members of the class."); *Will v. United States*, 90 F.R.D. 336, 339 (N.D. Ill. 1981) ("'In determining whether to adjust the 'lodestar' for quality of work or not, the District Court may consider . . . the benefit monetary or non-monetary conferred on the class . . . .'") (internal quotation marks omitted); *In re JP Morgan Chase & Co. Sec. Litig.*, MDL No. 1783, 2009 U.S. Dist. LEXIS 17196, at *16 (N.D. Ill. Mar. 3, 2009) ("That the benefits are non-monetary is not necessarily problematic -- courts have recognized that reforms, such as material changes in corporate governance, provide substantial benefits to corporations and their shareholders."); *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1136 (Del. Ch. 2011) (courts can give attorneys' fees for producing supplemental disclosures because "enhanced disclosure is an intangible, non-quantifiable benefit"); *In re Countrywide Corp. S'holders Litig.*, No. 3464, 2009 Del. Ch. LEXIS 158, at *2-3. (Del. Ch. Aug. 28, 2009) ("Although the benefit achieved for the class was not monetary, the supplemental and additional disclosures, which benefited the shareholders by increasing their understanding of the transaction . . . justify a fee award.").

### B.     A Substantial Benefit Was Conferred Upon Western Stockholders

#### 1.     The Supplemental Disclosures Benefited Stockholders

Due to Plaintiffs' Counsel's efforts, the disclosure of material information in the Supplemental Disclosures conferred a substantial benefit on Plaintiffs and Western stockholders prior to the March 24, 2017 vote on the Proposed Transaction.

---

*(cont'd from previous page)*

*Mills*, 396 U.S. at 396-97 (internal quotation marks omitted) (footnotes omitted).

Courts have long recognized the value of corrective disclosures like those at issue in this case. *See, e.g.*, *Mills*, 396 U.S. at 396-97 (noting the "stress placed by Congress on the importance of fair and informed corporate suffrage" and finding that, "regardless of the relief granted, private stockholders' actions of this sort involve corporate therapeutics, and furnish a benefit to all shareholders") (internal quotation marks omitted). Such disclosures are considered a valuable benefit because, when stockholders are being asked to vote in connection with a transformative corporate transaction, "stockholders are entitled to disclosure of all material facts pertinent to the decisions they are being asked to make." *In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421, 447-48 (Del. Ch. 2002); *see also id.* at 448 ("When a document ventures into certain subjects, it must do so in a manner that is materially complete and unbiased by the omission of material facts."); *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 199 (Del. Ch. 2007) ("Directors of Delaware corporations must disclose fully and fairly all material information within the board's control when they seek shareholder action.") (internal quotation marks omitted); *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998) (requiring disclosures to "provide a balanced, truthful account of all matters").[8]

Indeed, timely, meaningful disclosures such as those reflected in the amendments to the Preliminary Proxy Statement at issue here can provide greater benefit to a class than money damages, as they were:

> presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders'

---

[8] *See also* 15 U.S.C. § 78n(a); *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) (explaining that Section 14(a) and related rules prohibit solicitation of proxies by means of materially false or misleading statements); *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 448 (1976) (remedial purpose of Rule 14a-9 is to prohibit the issuance of misleading proxy statements to enable shareholders to make an informed choice).

> decision making process.  Considering all the circumstances presented, I have no
> difficulty concluding that the disclosures made here constitute adequate
> consideration for the settlement of the claims asserted and adequately supported
> the fee requested.

*In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53, at \*46 (Del. Ch.

Apr. 9, 1998).

Here, in response to Plaintiffs' Actions and their Counsel's efforts, Defendants disclosed

additional information regarding the process that led to the Transaction and material information

regarding forecasted financial metrics relied on by the Board to recommend the Transaction and

the banker to render its opinion that the Transaction was fair.  *See Brown v. Brewer*, No. CV 06-

3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at \*70 (C.D. Cal. June 17, 2010) ("A

reasonable shareholder would have wanted to independently evaluate management's internal

financial projections to see if the company was being fairly valued.  There is a substantial

likelihood that a reasonable shareholder would consider it important in making his decision")

(internal quotation marks omitted); *Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG

(ANx), 2014 U.S. Dist. LEXIS 71236, at \*19 (C.D. Cal. May 19, 2014) (same).

## 2.      Supplemental Disclosures Corrected the Forecasts

Plaintiffs alleged that the Proxy failed adequately to disclose information regarding

Western's projected financial data, including certain financial metrics used to determine the

Company's unlevered free cash flows ("FCF") on which Barclays relied for certain of its

valuation methodologies (used to obtain equity value ranges to value the Company for its

fairness opinion).  ¶¶ 4, 58.  Indeed, Defendants disclosed that in conducting the Discounted

Cash Flow Analysis Based on Management Projections, the implied equity value range was

derived from the implied enterprise value range "by subtracting the total projected *consolidated*

*debt* of Western Refining at December 31, 2016 (as reflected in the Western Refining unaudited

forecasted financial information), adding the projected *consolidated cash* of Western Refining at December 31, 2016 (as reflected in the Western Refining unaudited forecasted financial information), and subtracting the market value as of November 11, 2016, of MLP limited partner units not held by Western Refining." *See* Preliminary Proxy 98 (emphasis added), at Bilek Decl., Ex. A.  Barclays ran the same calculation for enterprise value based on the same inputs of "consolidated debt" and "consolidated cash" for its Discounted Cash Flow Analysis Based on Equity Analyst Estimates (Preliminary Proxy 100), Selected Comparable Company Analysis (Preliminary Proxy 102), and Selected Precedent Transaction Analysis (Preliminary Proxy 106). Yet, nowhere in the Preliminary Proxy are "consolidated debt" or "consolidated cash" disclosed. This omission is particularly misleading, because the Defendants did disclose forms of "cash" forecasts, e.g., the FCF, but failed to even describe the basis on which the "consolidated" cash and debt were calculated.  Moreover, disclosing the manner that Barclays calculated "enterprise value," a value that was utilized for the most important valuation methodologies underlying the fairness opinion, is particularly important here (in addition to the fact that the Preliminary Proxy falsely referenced those figures to management's forecasts elsewhere in the Preliminary Proxy), because of the unique company-specific metrics used for this calculation.  Enterprise value generally is a measure of a company's total value, calculated taking into account the total debt and equity and netting out cash and cash equivalents.  Neither the inputs nor any financial data was disclosed to weigh Barclays' manner in calculating enterprise value.

The Definitive Proxy, filed on February 17, 2017, reflected the omission by disclosing consolidated debt and consolidated cash for Western and WNRL:[9]

The following table presents selected unaudited forecasted financial information of Western Refining for the fiscal year ended 2016 prepared by Western Refining management and provided to the Western Refining board, Barclays and Tesoro:

| | December 31, 2016 |
|---|---|
| *(in millions)* | |
| **Western Refining and WNRL (1)** | |
| Consolidated Cash | $    225 |
| Consolidated Debt | $ 1,950 |

| WNRL | Number of Outstanding Units Held as of October 28, 2016 (2) | Value of Outstanding Units Held (based on November 11, 2016 market valuation) |
|---|---|---|
| Western Refining | 32.0 | $    666 |
| Tesoro | 0 | $        0 |
| Public | 29.2 | $    606 |

(1)  Includes WNRL cash and debt of $5 and $325, respectively.
(2)  Includes unvested units.

*See* Definitive Proxy at 125, Monteverde Decl., Ex. B.

The Definitive Proxy further reflected the disclosure of the Company's adjusted EBITDA for the various segments whereas previously, Defendants had only disclosed forecasted Total Adjusted EBITDA (Preliminary Proxy 117-18).   The failure to disclose EBITDA for each segment was particularly misleading because Barclays relied on the estimated EBITDA figures for each segment (2017-2018 for Refining, and 2017 for Retail and Midstream) to perform its Sum of the Parts Analysis (Preliminary Proxy 103-05).  Once again, the Preliminary Proxy refers stockholders to review the Company's "unaudited forecasted financial information" elsewhere in the Preliminary Proxy for these figures, but the information was not there.

After the Complaint was filed, Defendants corrected this omission by disclosing the following:

---

[9]  Western Refining Logistics, LP (NYSE: WNRL) is a master limited partnership formed by Western to own, operate, develop and acquire terminals, storage tanks, pipelines and other logistics assets related to the terminalling, transportation and storage of crude oil and refined products.  http://www.wnr.com/wnrl.

| Income Statement Items | | | | | | |
|---|---|---|---|---|---|---|
| Refining Segment Adjusted EBITDA | $ 592 | $ 671 | $ 784 | $ 1,015 | $ 974 |
| Retail Segment Adjusted EBITDA | $ 49 | $ 56 | $ 44 | $ — | $ — |
| WNRL Segment Adjusted EBITDA | $ 170 | $ 237 | $ 290 | $ 352 | $ 388 |
| Corporate/Other Adjusted EBITDA (b) | $ (16) | $ (25) | $ (61) | $ (13) | $ 64 |

*See* Definitive Proxy 124.

The Definitive Proxy further clarified that the segmented adjusted EBITDA for Corporate/Other Adjusted EBITDA included "logistics assets and organic growth projects and (ii) corporate general and administrative expenses." *See* Definitive Proxy at 124.

The failure to disclose information necessary for Western stockholders to assess these GAAP and non-GAAP (generally accepted accounting principles) financial projections included in the Proxy violated Rule 14a-9 and SEC Regulation G, 17 C.F.R. 244.100.[10] Indeed, the SEC specifically and publicly decried the widespread use of non-GAAP financial measures in shareholder communications because such measures lack consistent definitions and are often inherently misleading.[11]

---

[10] SEC Regulation G has two requirements: (1) a general disclosure requirement and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non- GAAP financial measure that, taken together with the information accompanying that measure . . ., contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading." 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non- GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

[11] Indeed, Mary Jo White, former Chair of the SEC, specifically raised the issue in a June 27, 2016 keynote address, during which she stated:

> [O]ur rules governing these communications make clear that **the presentation of non-GAAP measures cannot be misleading and require that they be reconciled to the appropriate GAAP measure** so that investors and analysts can compare them to the one that is consistently defined under the GAAP requirements . . . . In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation . . . . [L]ast month, the staff issued guidance addressing a number of troublesome practices

*(cont'd)*

There is no information more material to stockholders than the actual and/or estimated value of their holdings in a company.  *See Netsmart*, 924 A.2d at 203-04.  As a result of this Action, not only did Western stockholders obtain disclosure of financial data that wrongly was claimed to be in the Proxy, but also obtained required compliance with federal regulatory mandates.[12]

### 3.    Supplemental Disclosures Regarding Barclays' Market Valuations

The Complaint alleged that Proxy failed to disclose the company specific EBITDA multiples, or the median and average EBITDA multiples derived from its Selected Comparable Company Analysis (¶ 59), and the Selected Precedent Transaction Analysis (¶ 60).

These omissions rendered the analyses conducted by Barclays materially misleading because Western's stockholders were unable to determine how the multiples used in determining Western's value compare to the other transactions.  ¶¶ 59-60.  Without knowing any information

---

*(cont'd from previous page)*

> which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.

*Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html.  The SEC lacks the manpower and resources to adequately review the numerous filings it receives, which is the very reason why the federal securities laws provide shareholders with a private right of action.  *See J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) ("Private enforcement of the proxy rules provides a necessary supplement to Commission action.").

[12]  *See also David P. Simonetti Rollover IRA v. Margolis*, No. 3694-VCN, 2008 Del. Ch. LEXIS 78, at *30 (Del. Ch. June 27, 2008) ("The key assumptions made by a banker in formulating his opinion are of paramount importance to the stockholders because any valuation analysis is heavily dependent upon the projections utilized."); *In re Pure Res.*, 808 A.2d at 449 (shareholders are entitled to a "fair summary" of the investment bankers' work); *Biver v. Nicholas Fin., Inc.*, No. 8:14-cv-250-T-33TGW, 2014 U.S. Dist. LEXIS 73933, at *13 (M.D. Fla. May 30, 2014) (denying motion to dismiss Section 14(a) claim where proxy "summarize[d] Janney's two relative valuation analyses and equity discounted cash flow analysis in a manner that fails to provide shareholders with sufficient information to make an informed decision[.]").

about the population of multiples that were observed for these analyses, Western's stockholders had no way to determine whether the implied per share equity reference ranges set forth in the Proxy actually reflect the true value of their shares. *See* Preliminary Proxy 101-07, Bilek Decl., Ex. A.

The Definitive Proxy corrected these omissions by disclosing the individual multiples for each of the observed companies and the mean and median multiples:

| | | |
|---|---|---|
| Phillips 66 | 8.5x | 7.9x |
| Marathon Petroleum Corporation | 7.7x | 7.4x |
| Valero Energy Corporation | 5.6x | 5.4x |
| HollyFrontier Corporation | 7.3x | 6.8x |
| PBF Energy Inc. | 5.8x | 5.3x |
| **Median** | **7.3x** | **6.8x** |
| **Mean** | **7.0x** | **6.6x** |

Definitive Proxy 105, Bilek Decl., Ex. B.

The Definitive Proxy also disclosed the "One Year Forward" and "Two-Year Forward" EBITDA multiples for each transaction and the median multiples for each for each:

> Barclays derived comparable transaction reference valuation multiple ranges by analyzing and reviewing the one-year forward and two-year forward projected EBITDA purchase price multiples for the ten precedent transactions below, which were selected by Barclays using its industry knowledge and best judgment. In performing its analysis of the selected precedent transactions, Barclays noted the one-year forward median implied multiple of 6.1x and the two-year forward median implied multiple of 6.1x. In deriving the 2017E and 2018E reference multiple ranges of 5.5x-6.5x and 5.5-6.5x, respectively, Barclays took into consideration the implied one-year forward and two-year forward EBITDA purchase price multiples for each of the selected precedent transactions and applied its judgment as to the appropriate reference multiple ranges based on its familiarity with the selected precedent transactions and knowledge of the industry in which they occurred.

| (acquiror/target) | One-Year Forward | Two-Year Forward |
|---|---|---|
| Ultramar Corp. / Diamond Shamrock Inc. | 7.4x | 6.1x |
| Phillips Petroleum Co. / Tosco Corp. | 6.3x | 6.9x |
| Valero Energy Corp. / Ultramar Diamond Shamrock Corp. | 5.4x | 6.2x |

| | | |
|---|---|---|
| Valero Energy Corp. / Premcor Inc. | 6.8x | 6.0x |
| Marathon Oil Corporation / Marathon Ashland Petroleum LLC | 5.2x | 4.9x |
| Western Refining, Inc. / Giant Industries, Inc. | 5.9x | 5.4x |
| Holly Corporation / Frontier Oil Corporation | 6.8x | 8.6x |
| Energy Transfer Partners, L.P. / Sunoco Logistics Partners L.P. | 10.7x | 10.6x |
| Western Refining, Inc. / NTI (Western Refining's purchase of a 38.7% limited partner interest in and, the general partner of, NTI) | 5.8x | 4.7x |
| Western Refining, Inc. / NTI (Western Refining's purchase of the remaining limited partner interest in NTI) | 5.5x | 5.1x |
| **Median** | **6.1x** | **6.1x** |

Definitive Proxy 112, Bilek Decl., Ex. B.

Numerous courts have recognized the significance of the multiples observed in connection with Selected Companies and Precedent Transactions Analyses.  For example, in *Smith v. Robbins & Myers, Inc.*, the court denied defendants' motion to dismiss plaintiff's Section 14(a) and 20(a) claims, which were premised in part on the failure to disclose the individually observed multiples in connection with the financial advisor's Precedent Transactions and Selected Companies Analyses.  The court specifically reasoned that the omitted multiples constituted material, "critical financial" information, that was necessary for the company's shareholders to make an informed decision in connection with an all-cash merger and to determine whether the financial advisor's analyses contained flaws, such as applying the lowest multiples from the range of multiples observed.  969 F. Supp. 2d 850, 872-74 (S.D. Ohio 2013).  The same reasoning applies here.  Furthermore, the Delaware Court of Chancery has routinely emphasized the materiality of valuation multiples such as the ones omitted from the Preliminary Proxy in connection with determining the fair value of a company.  For example, in *In re Appraisal of the Orchard Enters., Inc.*, No. 5713-CS, 2012 Del. Ch. LEXIS 165, at *6-7 (Del. Ch. July 18, 2012), the Court held that a financial advisor's Comparable Companies and Precedent Transactions analyses were unreliable to determine the value of Orchard.  The court explained:

> What is more important to me, though, is that Orchard's expert generated an array of comparables from which valuation multiples in the form of medians and means could be derived, but then chose multiples well below the median and mean for each analysis without providing a sensible explanation.  At bottom, the expert did not draw any reasoned inference about the value of Orchard from his comparables. Rather, all he did was come up with a sample of comparables, conclude that Orchard was a much worse performer than any of them for reasons that are inconsistent with the data in his own analysis and then subjectively pick a lower multiple to justify an outcome.  I cannot embrace that approach.

*Id.*

Federal courts have followed suit in appraisal actions.  For example, in *Swope v. Siegel-Robert, Inc.*, 74 F. Supp. 2d 876, 892-93, 908 (E.D. Mo. 1999), the court repeatedly emphasized the significance of the mean, median and range of multiples observed in determining whether the multiples applied by a financial expert were reasonable.  Plaintiff sought disclosure of a fair summary of the multiples observed, which courts have recognized, at the very least, includes the disclosure of a combination of the low to high range, mean and median multiples.  Such metrics are clearly material, particularly when the requested disclosures are circumscribed.  Indeed, even the courts that have rejected the argument that individual multiples need to be disclosed have done so because of the fact that the "the high, low, mean, and median multiples," were disclosed. *Dent v. Ramtron Int'l Corp.*, No. 7950-VCP, 2014 Del. Ch. LEXIS 110, at *34 (Del. Ch. June 30, 2014).

### 4.    The Supplemental Disclosures Explained the Sales Process

Plaintiff also alleged that the Preliminary Proxy failed to disclose the process by which the Board determined a superior alternative transaction was unlikely.  The cursory explanation of this critical juncture gave Plaintiffs reason to pause, particularly where two Individual Defendants were ensured Tesoro directorships.  ¶ 3.  Because the Board failed to conduct a market check, the information supporting the Board's determination was particularly material to

Western's stockholders. Without this information, the Preliminary Proxy was rendered materially false or misleading because Western's stockholders were unable to determine whether the Board's opinion regarding potential alternative transactions was reasonable. ¶ 57.

In the first amendment to the Preliminary Proxy, filed on January 18, 2017, just 13 days after the Complaint was filed, Defendants disclosed, amongst others things, that in deciding a superior proposal would not come forth, the Board considered: "(1) the likely strategic objectives of potential counterparties, including the likelihood of engaging in a transaction, geographic focus, and growth initiatives, (2) the relative valuations of Western Refining and the potential counterparties, including the level of expected synergies and the anticipated benefits of the combined entity to Western Refining stockholders, (3) the premium that could be received by Western Refining stockholders, including the financial ability of the potential counterparties to pay such premium, (4) the form of consideration that potential counterparties might offer in a transaction with Western Refining and (5) the culture and management style of the potential counterparties." *See* Definitive Proxy 74-75, Bilek Decl., Ex. B.

The Supplemental Disclosures surrounding the sale process and a Board's recommendation are particularly material because shareholders "entrust management with evaluating the alternatives and deciding which fundamental changes to propose." *In re 3Com S'holders Litig.*, No. 5067-CC, 2009 Del. Ch. LEXIS 215, at *20 (Del. Ch. Dec. 18, 2009). Thus, "shareholders can be expected to put some weight upon such a statement" and "are entitled to an accurate, candid presentation." *Matador Capital Mgmt. Corp. v. BRC Holdings, Inc.*, 729 A.2d 280, 297 (Del. Ch. 1998) (internal quotation marks omitted). It necessarily follows that when deciding to vote in favor of a proposed merger, "a reasonable stockholder would [] need[]

to understand what alternatives to the [m]erger existed." *In re Saba Software, Inc. Stockholder Litig.*, No. 10697-VCS, 2017 Del. Ch. LEXIS 52, at *39 (Del. Ch. Mar. 31, 2017).

Western stockholders would have only had a bald assurance that a superior offer was not forthcoming had Defendants not disclosed the factors they considered at this critical juncture. As these factors offered Western stockholders a clearer and more candid presentation of the solicitation information, its disclosure was integral.

### C.   The Requested Fee and Expense Are Reasonable

In determining the appropriate amount of an award of attorneys' fees, the Court should consider Plaintiffs' Counsel's lodestar and expenses, and the relevant "*Johnson*"[13] factors set forth by the Fifth Circuit.  *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 966 (E.D. Tex. 2000) ("the Fifth Circuit blended the lodestar and *Johnson* analysis into a class action that was not a traditional common-fund class action[.]").  The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id*. at 965-66.

Plaintiffs' Counsel respectfully submit that their request is fair and reasonable in light of the benefits achieved awards in other similar cases, and other relevant factors.

---

[13]  *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

1.      **Plaintiffs' Counsel's Lodestar Support the Requested Fee**

Plaintiffs' Counsel seeks an award of $300,000 attributable to the benefit obtained from the additional information contained in Definitive Proxy.

Plaintiffs' Counsel have cumulatively spent more than 262.3 hours in the prosecution of this action, all of which was necessary to obtain the Supplemental Disclosures for Western stockholders prior to the March 24, 2017 vote.  *See* Bilek Decl., Exs. C-G.[14]  Applying their reasonable hourly rates, Plaintiffs' Counsel's collective lodestar is $152,340.75.  *See id*.  Given the benefit conferred (as outlined above) and the contingent nature of Plaintiffs' Counsel's compensation, a premium over counsel's normal hourly rate is appropriate.[15]  *See In re Dell, Inc., Sec. Litig.*, No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281, at *39 (W.D. Tex. June 11, 2010) ("[T]he lodestar method [asks the court to] multiply[] the number of reasonable hours expended by a reasonable hourly rate and apply[] a lodestar multiplier.").  Plaintiffs' Counsel also incurred $3,766.07 in expenses in litigating this Action

The 1.94 multiplier requested here easily falls within the range of implied multipliers that

---

[14]  The lodestar and expenses incurred by Plaintiffs' Counsel are documented in the Time and Expense Declarations for the firms that worked on this case. Bilek Decl., Exs. C-H.  As shown in the firm resumes attached to the declarations, Plaintiffs' Counsel are experienced in complex litigation such as this and have been appointed as lead or co-lead counsel in numerous nationwide class actions.

[15]  *See Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983), *superseded in part by* 42 U.S.C. § 1997e(d)(1) (explaining that "on many occasions awarding counsel fees that reflect the full market value of their time will require paying more than their customary hourly rates" and noting that contingency arrangements cause lawyers to bear the risk of non-recovery usually borne by clients in cases where lawyers are paid an hourly rate, and also cause lawyers to forfeit time value of money); *Ryan ex rel. Maxim Integrated Prods. v. Gifford*, No. 2213-CC, 2009 Del. Ch. LEXIS 1, at *42 (Del. Ch. Jan. 2, 2009) (explaining that where stockholder plaintiffs' attorneys undertook the case on an entirely contingent basis and faced the possibility of receiving no consideration for their efforts if they were not successful in obtaining a recovery, "an attorney may be entitled to a much larger fee . . . than when [the attorney's compensation] is fixed on an hourly or contractual basis"); *In re Plains Res. Inc. S'holders Litig.*, No. 071-N, 2005 Del. Ch. LEXIS 12, at *22 (Del. Ch. Feb. 4, 2005) ("[P]laintiffs' counsel were all retained on a contingent fee basis, and stood to gain nothing unless the litigation was successful.  It is consistent with the public policy of Delaware to reward this risk-taking in the interests of shareholders.").

have been found reasonable in other class actions that conferred similar benefits to a class. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts[.]"); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) ("In shareholder litigation, courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation.") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (3.28 multiplier)); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (3.6 multiplier "well within the acceptable range for fee awards in complicated class action litigation[.]"). Finally, the Fee and Expense Award is in line with recent decisions addressing similar disclosures.[16]

The Supplemental Disclosures, which were made prior to the stockholder vote on the Transaction, permitted Western stockholders to exercise their right to informed corporate suffrage by making a fully informed decision on the Transaction. *Fountain v. Avondale Indus., Inc.*, No. 95-1198, 1996 U.S. Dist. LEXIS 5045, at *2 (E.D. La. Apr. 18, 1996) (awarding attorneys' fees and recognizing that a shareholder's "right to cast an informed vote, in and of itself is a substantial interest worthy of vindication").

Here, Plaintiffs' Counsel pursued these Actions on an entirely contingent basis, obtained the best-possible outcome for the Class with respect to their Section 14(a) claim after litigating

---

[16] *See In re MetroCorp Bancshares S'holders Litig.*, No. 4:13-cv-03198, Order Approving Settlement and J. 10 (S.D. Tex. Oct. 23, 2014) (awarding fees and expenses of $425,000 for supplemental disclosures and .5% reduction of termination fee) (Bilek Decl., Ex. H); *Philips v. Texas Indus., Inc.*, No. 3:14-cv-00740-B, Order and Final J. 8 (N.D. Tex. June 10, 2015) (awarding fees and expenses of $360,000 for supplemental disclosures) (Bilek Decl., Ex. I); *Pompano Beach Police & Firefighters' Ret. Sys. v. Odyssey Healthcare, Inc.*, No. CC-10-03561-E, Final J. and Order of Dismissal with Prejudice 7 (Tex. Dist. Dallas Cty. May 18, 2012) (awarding fees and expenses of $675,000 for additional disclosures) (Bilek Decl., Ex. J); *Call4U, Ltd. v. Goodman Global, Inc.*, No. 2007-66888, Final J. and Order of Dismissal with Prejudice 5 (Tex. Dist. Harris Cty. May 13, 2009) (awarding $890,000 for additional disclosures and amendment to merger agreement) (Bilek Decl., Ex. K).

on an expedited basis, and then conducted discovery to confirm the fairness of the Settlement. Additionally, Plaintiffs' Counsel's acceptance of these Actions necessarily precluded them from devoting resources to other litigation and the prosecution of additional cases.  These factors warrant applying a reasonable multiplier of 1.94.  *See Garza v. Sporting Goods Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *114 (W.D. Tex. Feb. 6, 1996) (suggesting that "a standard risk multiplier of 2 should be used in all contingent fee arrangements."); *In re Schering-Plough/Merck Merger*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *55-58 (D.N.J. Mar. 26, 2010) (applying multiplier of 2.18 in disclosure-only settlement and noting that a multiplier of 3 may be awarded even in "a simple case where no risks pertaining to liability or collection were pertinent," and that "the application of a multiplier of 2.18 is not uncommon where the lodestar method is applied.") (internal quotation marks omitted).

### 2.    Fee Awards in Similar Cases

The requested attorneys' fee award is also fair and reasonable in light of the fees awarded in similar disclosure-only settlements approved by courts across the country.  *See Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *48-49 ($3.5 million fee); *Lambert v. Tellabs, Inc.*, No. 1:13-cv-07945, Final Order and J. 9 (N.D. Ill. Sept. 11, 2015) ($700,000 fee) (Bilek Decl., Ex. L); *Nichting v. DPL Inc.*, No. 3:11-cv-141, Order and Final J. 7 (S.D. Ohio Feb. 24, 2012) ($700,000 fee for disclosure of previously withheld projections) (Bilek Decl., Ex. M); *Collier v. BrightPoint, Inc.*, No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 62125, at *9 (S.D. Ind. May 1, 2013) ($600,000 fee); *In re Crestwood Midstream Partners Unitholder Litig.*, No. 4:13-cv-01528, 2014 U.S. Dist. LEXIS 185018, at *13 (S.D. Tex. May 16, 2014) ($595,000 fee); *In re Covidien PLC Sec. Litig.*, No. 1:14-cv-12949-LTS, Order and Final J. 7 (D. Mass. Sept. 23, 2015) ($540,000 fee) (Bilek Decl., Ex. N); *Cooke v. Equal*

*Energy Ltd.*, No. 5:14-cv-00087-C, Fed. Court Order and Final J. 9 (W.D. Okla. Apr. 8, 2015) ($650,000 fee) (Bilek Decl., Ex. O).

Further, the requested fee and expense award was negotiated by the parties based upon the work performed by Plaintiffs' Counsel, the results achieved, and the fee awards in similar cases, and reflects a compromise reached through arm's-length bargaining.  Defendants' counsel undoubtedly sought to protect the financial interests of their clients, who, unlike the Settlement Class, have a financial stake in the amount of the fees and expenses to be paid.  *See Moore v. Verizon Commc'ns, Inc*., No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609, at \*48 (N.D. Cal. Feb. 5, 2013) (noting that party agreeing to pay attorneys' fees as part of settlement has one "ultimate objective - paying as little as possible. . . .").  In such circumstances, the end result of those negotiations—which reflects all of the counsel's experience and views as to what is appropriate—is entitled to significant weight in considering Plaintiffs' Counsel's fee request.  As the Western District of Texas explained in awarding the agreed upon amount of attorneys' fees in a nonpecuniary settlement: "This award of attorneys' fees and expenses is separate and apart from the class settlement which is not a monetary common fund--and will not in any way diminish the class settlement.  Were the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but rather would only benefit [defendant]." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007).  The same reasoning warrants approving the agreed upon attorneys' fee and expense award here.

In sum, the above-referenced factors support a fee and expense award of $300,000 to Plaintiffs' Counsel.

III.     **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully submits that a Fee and Expense Award totaling $300,000 is fair and reasonable in proportion to the benefits obtained. Accordingly, Plaintiffs respectfully request that the Court award attorneys' fees and expenses for their counsel in this amount against Western and its successor(s) in interest.

DATED:  April 19, 2017.

Respectfully submitted,

_____/s/ Thomas E. Bilek_____
Thomas E. Bilek
Texas Bar No. 02313525
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Counsel for Plaintiffs*

Juan E. Monteverde
**MONTEVERDE & ASSOCIATES PC**
350 Fifth Avenue, 59th Floor
New York, NY  10118
Tel: (212) 971-1341
Fax: (212) 601-2610
Email: jmonteverde@monteverdelaw.com

*Interim Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Srini Vason*

James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY  10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
Email:  jwilson@faruqilaw.com

*Counsel for Plaintiff Brian Miller*

Shane T. Rowley
**LEVI & KORSINSKY LLP**

23

733 Summer Street, Suite 304
Stamford, CT  06901
Tel: (212) 363-7500
Fax: (212) 363-7171

*Counsel for Plaintiff Gene Love*

Michael J. Palestina, Esq.
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, LA  70447
Tel.: (504) 455-1400
Fax: (504) 455-1498
E-mail: Michael.Palestina@ksfcounsel.com

*Counsel for Plaintiff John Solak*

CERTIFICATE OF CONFERENCE

I certify that the Plaintiffs' counsel conferred with counsel for Defendants, who are opposed to this motion.

*/s/ Thomas E. Bilek*
Thomas E. Bilek

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the District CM/ECF system on April 19, 2017, which caused an electronic copy of same to be served automatically upon all counsel of record.

*/s/ Thomas E. Bilek*
Thomas E. Bilek

24