UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| In re WESTERN REFINING, INC. STOCKHOLDER LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS | § § § § § § § § § § Lead Case No. 3:17-cv-00002 |

**WESTERN REFINING INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

Harrel L. Davis III
Texas Bar No. 05567560

GORDON DAVIS JOHNSON & SHANE P.C.
4695 N. Mesa Street
El Paso, Texas  79912
Tel:  (915) 545-1133
Fax: (915) 545-4433

Paul R. Bessette
Texas Bar No. 02263050

Jill R. Carvalho
Texas Bar No. 24087266

KING & SPALDING LLP
401 Congress Ave, Ste. 3200
Austin, TX  78701
Tel:  (512) 457-2050
Fax: (512) 457-2100

*Counsel for Defendants Western Refining, Inc., Paul Foster, Sigmund Cornelius, Frederick Francis, Robert Hassler, Brian Hogan, Jeff Stevens, and Scott Weaver*

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. iii

Introduction ...............................................................................................................................1

Statement of Relevant Facts......................................................................................................2

    Preliminary Proxies and SEC Comments Are Part of the Standard Process .......................2

    Plaintiffs' Nearly Identical Complaints Were Filed in Response to the Preliminary Proxy ....................................................................................................................................3

    Plaintiffs' "Strategy" Is Increasingly Common and Harms Companies and Shareholders..........................................................................................................................3

Legal Standard ..........................................................................................................................4

Argument ..................................................................................................................................5

I.    Plaintiffs' Counsel Are Not Entitled To *Any* Fees Because the Litigation Did Not Cause A Benefit to Western Refining or its Shareholders and Was Not Meritorious When Filed. ...........................................................................................................................5

    A.    Plaintiffs did not benefit Western Refining or its shareholders in any way because all revisions to the proxy were made in response to SEC comments. ...................................................................................................................6

    B.    Plaintiffs' Complaint was not meritorious when filed because it targeted the preliminary proxy rather than the definitive proxy. ..........................................7

    C.    This lawsuit harmed rather than benefited Western Refining and its shareholders, and paying attorneys' fees will only compound the harm. .................8

II.    The Amount of Attorneys' Fees Requested Is Patently Unreasonable...............................8

Conclusion ...............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Brown*,
   988 A.2d 412 (Del. 2010) ...................................................................................................4, 5

*Barton v. Drummond Co.*,
   636 F.2d 978 (5th Cir. 1981) .....................................................................................................5

*City of Burlington v. Dague*,
   505 U.S. 557 (1992)...............................................................................................................9, 10

*Ferro v. Blankenship*,
   No. EP-95-CA-004-DB, 1995 WL 18236650 (W.D. Tex. Mar. 17, 1995) ..............................7

*Garza v. Sporting Goods Properties, Inc.*,
   No. Civ. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996)................................10

*Johnson v. Georgia Highway Express*,
   488 F.2d 714 (5th Cir. 1974) ..................................................................................................10

*Kinnison v. City of San Antonio*,
   No. 08-CV-421-XR, 2011 WL 1399094 (W.D. Tex. Apr. 12, 2011).......................................9

*Love v. Foster*,
   No. 3:17-cv-00008 (W.D. Tex. Jan. 11, 2017) ........................................................................3

*Malone v. CST Brands, Inc.*,
   No. SA-16-CA-0955-FB, 2016 WL 8258791 (W.D. Tex. Nov. 10, 2016) .....................1, 2, 4

*Miller v. Foster*,
   No. 3:17-cv-00004 (W.D. Tex. Jan. 5, 2017) ..................................................................3, 8, 9

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)................................................................................................................4, 5

*Pope v. Cliffs Nat. Res., Inc.*,
   No. 1:14-CV-1234, 2014 WL 4930681 (N.D. Ohio Oct. 1, 2014)............................................5

*In re Schering-Plough/Merck Merger Litig.*,
   No. A09-CV-1099DMC, 2010 WL 1257722 (D.N.J. Mar. 26, 2010).......................................9

*Shomberg v. Foster*,
   No. 3:17-cv-00014 (W.D. Tex. Jan. 12, 2017) ........................................................................3

*Solak v. Western Refining*,
  No. 3:17-cv-00020 (W.D. Tex. Jan. 19, 2017) ................................................................3

*In re Trulia, Inc., Stockholder Litig.*,
  129 A.3d 884 (Del. Ch. 2016) ..........................................................................................4

*Vasan v. Foster*,
  No. 3:17-cv-00002-DCG (W.D. Tex. Jan. 4, 2017) .....................................................3, 8

*In re Walgreen Co. Stockholder Litig.*,
  832 F.3d 718 (7th Cir. 2016) .......................................................................................2, 4

*Watkins v. Fordice*,
  7 F.3d 453 (5th Cir. 1993) ...............................................................................................9

**Statutes and Rules**

15 U.S.C. § 78n(a)
  (Section 14(a) of the Securities Exchange Act) .............................................1, 4, 5, 7

17 C.F.R. § 240.14a-6 .................................................................................................2, 3

17 C.F.R. § 240.14a-9(a) ................................................................................................7

**Other Authorities**

Cain, Matthew D., Jill E. Fisch, Steven Davidoff Solomon, and Randall S.
  Thomas, The Shifting Tides of Merger Litigation, VANDERBILT L. REV., 2018
  (Forthcoming) .................................................................................................................4

**INTRODUCTION**

Plaintiffs' counsel, through its Motion for an Award of Attorneys' Fees and Expenses, seeks to further burden Western Refining and its shareholders with a baseless and exorbitant fee. The motion should be denied because:

1. The lawsuits conferred no benefit on Western Refining or its shareholders in the form of additional disclosures – the disclosures were made solely in response to comment letters from the SEC pursuant to the normal process, and *were not* made in response to the litigation;

2. The lawsuits were premature, legally deficient, and not meritorious when filed, as Section 14(a) of the Securities Exchange Act applies only to *definitive* proxies, not the preliminary proxy that was challenged here;

3. Plaintiffs were aware of the lawsuits' deficiencies, as they agreed to voluntarily dismiss the complaints almost immediately after Western Refining filed its motion to dismiss;

4. The lawsuits actually inflicted harm on Western Refining and its shareholders in the form of legal fees incurred to file a motion to dismiss and to respond to this motion. Paying Plaintiffs' counsel any fees for filing such useless complaints will only compound that harm; and

5. The fee request is outrageous and out-of-line with both the amount of work performed and the El Paso legal market. This Court should not reward Plaintiffs' tainted business model of filing premature, copy-cat lawsuits, getting too many lawyers involved, and coercing a settlement or mootness fee.

Describing a case with similar facts, this Court colorfully noted that "[t]his litigation reminds the Court of an often used phrase "to throw something against the wall and see what sticks," or in this case, what might bounce back in the nature of attorney's fees." *Malone v. CST*

1

*Brands, Inc.*, No. SA-16-CA-0955-FB, 2016 WL 8258791 at *6 (W.D. Tex. Nov. 10, 2016).[1]

Like *Malone,* this lawsuit is yet another example of a merger strike suit, a term that

> "refer[s] disapprovingly to cases in which a large public company announces an agreement that requires shareholder approval to acquire another large company, and a suit, often a class action, is filed on behalf of shareholders of one of the companies for the sole purpose of obtaining fees for the plaintiffs' counsel."

*In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 721 (7th Cir. 2016). Just as in those cases, and as in many recent disclosure-only cases in Delaware, Plaintiffs' counsel are not entitled to *any* award of attorneys' fees.

## STATEMENT OF RELEVANT FACTS

This response only describes facts directly relevant to attorneys' fees. Details of the case more generally are explained in Western Refining's Motion to Dismiss at 2–7.

**Preliminary Proxies and SEC Comments Are Part of the Standard Process**

Corporations are required to file preliminary proxies at least 10 calendar days prior to the date the definitive proxy will be sent to shareholders. 17 C.F.R. § 240.14a-6. Corporations are encouraged to file sooner, though, so that the SEC Staff may review the filing.[2] When the SEC reviews disclosures such as proxy statements, it frequently responds with comments. Corporations may respond to comments and file an amended proxy. This back-and-forth can be repeated as necessary.

---

[1] Mr. Bilek, the Plaintiffs' local counsel in this case, was also the local plaintiffs' counsel in *Malone*. 2016 WL 8258791 at *1.

[2] SEC's Division of Corporation Finance, "Filing Review Process," available at https://www.sec.gov/divisions/corpfin/cffilingreview.htm. All information from this and the next paragraph is taken from this SEC publication.

2

Western Refining filed its preliminary proxy on December 14, 2016.[3] Mot. Ex. A.  SEC Staff filed comments on January 10, 2017.  Ex. B.  Western Refining and Tesoro responded on January 18.  Ex. C.  The SEC sent additional comments on January 30, to which Western Refining and Tesoro responded on February 6, 2017.  Ex. D, Ex. E.  On February 14, Western Refining and Tesoro asked that the second-amended proxy become effective on February 16.

**Plaintiffs' Nearly Identical Complaints Were Filed in Response to the Preliminary Proxy**

Western Refining and Tesoro announced the merger agreement on November 16, 2016.  The companies jointly filed preliminary proxy materials on December 14, 2016.  Five complaints thereafter challenged the sufficiency of the preliminary proxy.  The first, *Vasan v. Foster*, No. 3:17-cv-00002-DCG, was filed on January 4, 2017, and the last, *Solak v. Western Refining*, No. 3:17-cv-00020, on January 19.[4]

Four of the complaints are nearly identical; the fifth is similar but adds several allegations.  Some complaints also name Tesoro as a defendant.  To illustrate this, Exhibit F shows a redline comparison between the *Vasan* complaint, the first one filed, and the *Miller* complaint, filed the next day.  The redline shows that there are only **five tiny differences**, not counting the case style, plaintiff name, and signature blocks, between these two complaints.

**Plaintiffs' "Strategy" Is Increasingly Common and Harms Companies and Shareholders**

When a merger of two public companies is announced, plaintiffs' lawyers line up to file complaints alleging various misdeeds against the companies and their directors, including

---

[3] Western Refining and Tesoro technically filed an S-4 Registration Statement, which serves as a proxy under 17 C.F.R. § 240.14a-6(j)(1)(i).  Such a filing is subject to all the same requirements as a proxy.

[4] The three other cases were: *Miller v. Foster*, No. 3:17-cv-00004 (Jan. 5, 2017); *Love v. Foster*, No. 3:17-cv-00008 (Jan. 11, 2017); *Shomberg v. Foster*, No. 3:17-cv-00014 (Jan. 12, 2017).  Mr. Shomberg's lawyers have not joined the fee request.

3

allegations that the proxy contained material misstatements and omissions.[5] *In re Walgreen Co. Stockholder Litig.*, 832 F.3d at 721.  A case under Section 14(a) of the Securities Exchange Act, which often results in only minimal additional disclosures, "yields fees for class counsel and nothing for the class—[so it] is no better than a racket." *Id.* at 724.  Delaware courts have significantly limited the circumstances under which "disclosure-only" settlements are approved, so many plaintiffs now file these types of cases in federal court.  *See In re Trulia, Inc., Stockholder Litig.*, 129 A.3d 884, 907 (Del. Ch. 2016); Cain, *supra* n.5, at 1–2 (discussing move from Delaware to federal courts).

Federal courts, including this Court, are recognizing that these cases are not good for businesses or shareholders—they only benefit plaintiffs' counsel.  *E.g., Malone*, 2016 WL 8258791 at *6.  This case, in which five copy-cat complaints were filed before the definitive proxy was even filed, is a particularly egregious example of this disturbing trend.

## LEGAL STANDARD

To receive an award of attorneys' fees under the corporate benefit doctrine, Plaintiffs' attorneys "must show, as a preliminary matter, that (i) the suit was meritorious when filed; (ii) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (iii) the resulting corporate benefit was causally related to the lawsuit." *Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 417 (Del. 2010); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970) (quoting *Bosch v. Meeker Cooperative Light & Power Assn.*, 101 N.W.2d 423, 425 (Minn. 1960)).  The "substantial benefit" need not be

---

[5] In 2014, 91% of all completed deals were challenged in at least one lawsuit. That number declined to 89% in 2015 and 73% in 2016.  Importantly, federal filings increased from 20% of deals in 2015 to 37% in 2016.  Cain, Matthew D., Jill E. Fisch, Steven Davidoff Solomon, and Randall S. Thomas, The Shifting Tides of Merger Litigation (March 13, 2017) at 6, 22. VANDERBILT L. REV., 2018 Forthcoming; available at https://ssrn.com/abstract=2922121

monetary; disclosure of information can be sufficient to warrant fees and expenses for plaintiffs' counsel. *Mills*, 396 U.S. at 392.

Importantly, "[c]ausation is the crucial link upon which any equitable award of attorneys' fees must be based, because if plaintiff's suit did not in some respect cause the [Defendant's remedial action], equitable principles could not justify an award."[6] *Barton v. Drummond Co.*, 636 F.2d 978, 983 (5th Cir. 1981). There is a rebuttable presumption that the plaintiffs' litigation caused the substantial benefit. *Alaska Elec. Pension Fund*, 988 A.2d at 417. Mere chronology, however, while potentially relevant to determining whether the plaintiffs' litigation caused the substantial benefit, is not determinative. *E.g., Pope v. Cliffs Nat. Res., Inc.*, No. 1:14-CV-1234, 2014 WL 4930681 at *1–3 (N.D. Ohio Oct. 1, 2014) ("under the circumstances of this case, the simple chronology is incomplete and inadequate to create a presumption that his filing of the instant lawsuit was the cause of the Defendant's [action that mooted the complaint].").

## ARGUMENT

**I.     Plaintiffs' Counsel Are Not Entitled To *Any* Fees Because the Litigation Did Not Cause A Benefit to Western Refining or its Shareholders and Was Not Meritorious When Filed.**

Plaintiffs' counsel discuss at length the issues they identified in the *preliminary* proxy, and note that these issues have been resolved in the definitive proxy. What they ignore, however, is causality — the "crucial link," *Barton*, 636 F.2d at 983 — and they fail to even mention the SEC's publicly filed comments, which raised, *inter alia*, the same points as Plaintiffs did. They also fail to address the central flaw in the complaints, which was discussed at length in the Motion to Dismiss: no valid cause of action existed because Section 14(a) applies

---

[6] Western Refining notes that Plaintiffs cite this case in their Motion, but do not mention the element of causation that was discussed at length in the case. Motion at 4-5.

5

only to definitive proxies. Western Refining's proxy was not definitive until Feb. 16, 2017, so no lawsuit should have been filed before then. But, of course, by then the SEC's pre-approval review system had worked as intended and the definitive proxy addressed all of the SEC's comments. In short, this entire litigation was unnecessary and ultimately harmful to Western Refining and its shareholders.

A.  **Plaintiffs did not benefit Western Refining or its shareholders in any way because all revisions to the proxy were made in response to SEC comments.**

All changes to the proxy were made in response to SEC comment letters, in the ordinary course of the SEC review process. No changes to the proxy were made in response to Plaintiffs' lawsuits. This is well documented by the SEC. Exhibit A is a chart summarizing the SEC comments that overlap with Plaintiffs' allegations, and Western Refining's responses.[7]

Plaintiffs' operative complaint ("Complaint") alleged that Western Refining had failed to include material information in three categories.[8] These three categories, however, were specifically addressed in the SEC's comments. *See* Exs. B, D. For example, the SEC asked Western Refining to "explain in more detail why and how senior management and Barclays came to believe that it was unlikely a transaction [with other parties] … would be able to offer greater value to Western Refining stockholders," Plaintiffs' first issue. *Compare* Ex. B, SEC's First Letter at question 3 with Compl. ¶ 56. The SEC also asked Western Refining to "define unlevered free cash flows," Plaintiffs' second issue. *Compare* Ex. D, SEC's Second Letter at

---

[7] Copies of the SEC's comments are included as Exhibits B and D, and Western Refining/Tesoro's responses are included as Exhibits C and E. The SEC raised other issues in the comments, as evidenced in the exhibits, but for purposes of Plaintiffs' Fee Request, this response only focuses on the overlapping allegations.

[8] Mr. Miller's complaint, originally filed in Case No. 3:17-cv-00004, was designated the operative complaint. *In re Western Refining Inc.*, No. 3:17-cv-00002, ECF No. 4 at ¶ C.2.

6

question 6 *with* Compl. ¶ 58.  And the SEC asked Western Refining for individual, not summary EBITDAs in the comparables analysis, Plaintiffs' third and last issue.  *Compare* Ex. D, SEC's Second Letter at question 4 *with* Compl. ¶¶ 59–60.

Western Refining and Tesoro repeatedly explained in their SEC response letters that they supplemented the requested information in response to the SEC's comments.  For example:

- Ex. C at 2 ("In response to the Staff's comment, the disclosure on pages 73 through 75 has been revised.") (why no superior alternatives existed);
- Ex. E at 4 ("In response to the Staff's comment, page 122 has been revised. . . .") (free cash flow measure);
- Ex. E at 3 ("In response to the Staff's comment, additional disclosures have been included in pages 104–105, 108–109, and 11 of Amendment No. 2."); and
- Ex. E at 4 ("In response to the Staff's comment, additional disclosures have been included on pages 124, 125, and 127 of Amendment 2.") (individual EBITDAs in addition to summary measures).

By the time the definitive proxy was filed—the only one that actually solicited shareholders and could potentially give rise to liability under Section 14(a)—none of Plaintiffs' claims remained at issue.  Stated another way, the definitive proxy that was filed would look *exactly* the same had none of Plaintiffs' lawsuits been filed.  Plaintiffs' lawsuits added absolutely nothing to the process, and Plaintiffs' counsel are thus not entitled to an award of fees.

**B.     Plaintiffs' Complaint was not meritorious when filed because it targeted the preliminary proxy rather than the definitive proxy.**

The Complaint would not have survived Western Refining's motion to dismiss because Section 14(a), and the related SEC Rule 14a-9, apply only to definitive proxies, not to preliminary proxies—and the Complaint targeted the preliminary proxy.  15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a).  *See also Ferro v. Blankenship*, No. EP-95-CA-004-DB, 1995 WL 18236650 at *3 (W.D. Tex. Mar. 17, 1995) (dismissing Section 14(a) claim when it was based

on a preliminary proxy).  Plaintiffs admitted as much when they agreed to voluntarily dismiss the Complaint in the face of Defendants' motion to dismiss.   Joint Stipulated Motion and Order to Dismiss Action as Moot, ECF No. 12 (Mar. 6, 2017).

**C.     This lawsuit harmed rather than benefited Western Refining and its shareholders, and paying attorneys' fees will only compound the harm.**

Western Refining and its shareholders incurred costs, and were therefore harmed, by having to defend Plaintiffs' premature and legally invalid lawsuits.  Awarding fees to Plaintiffs' counsel for filing the merger strike suits will only further harm shareholders and encourage Plaintiffs' counsel to continue to bombard companies and federal courts with these baseless lawsuits resulting in financial harm to the companies and shareholders, and a monumental waste of limited judicial resources.

**II.     The Amount of Attorneys' Fees Requested Is Patently Unreasonable.**

Not only are Plaintiffs' counsel not entitled to any attorneys' fees, the fee request itself is patently unreasonable.  The hours worked are highly inflated given the nearly identical complaints filed; the hourly rates paid are not appropriate for the quality of work or for the El Paso market; and no lodestar multiplier is warranted.

*First,* the number of hours the law firms purported to work on the complaints is not reasonable.  For example, the first complaint, *Vasan v. Foster*, was filed on January 4, 2017.  Mr. Monteverde declared that he and his associates spent 56.25 hours working on the case.  Mot. Ex. C.  The next day, *Miller v. Foster*, was filed by Faruqi & Faruqi, after that firm purportedly spent a combined 128 hours on the complaint.[9]   *Id.* Ex. E.  The only differences between these

---

[9] Mr. Vasan's lawsuit was filed against Western Refining, directors and officers of Western Refining, Tesoro, and the merger subsidiaries.  Mr. Miller's suit was filed only against Western Refining and its officers and directors.

complaints are **five small, non-substantive typo corrections and grammar fixes.** This is shown in Exhibit F, which is a redline between Mr. Monteverde's and Faruqi & Faruqi's complaints. The *Miller* complaint supposedly took **128 hours** to research, draft, and file, but changed only five words, the case style, and signature block, from the earlier complaint—but at a cost of an *additional* $68,406.25 in attorneys' fees. That is incredible!

*Second,* the rates charged by Plaintiffs' counsel are not reasonable. The rates are far outside of El Paso's rates, as explained in the affidavit of Western Refining's counsel, Harrel Davis. *See* Ex. G. Considering the local market for legal expenses is reasonable. *In re Schering-Plough/Merck Merger Litig.*, No. A09-CV-1099DMC, 2010 WL 1257722 at *17 (D.N.J. Mar. 26, 2010) (citation omitted) ("The Supreme Court has indicated that the district court can also consider the 'prevailing market rates' in the relevant community to assist in the determination of an appropriate hourly rate."). But even by standards applicable in bigger cities, the rates are still unreasonable. The most egregious example is the rate charged for paralegal services. Mr. Bilek's paralegal, in Houston, is billed at $300.00 per hour. Mot. Ex. D. The Faruqi & Faruqi law firm billed its paralegals at $375 and $300 per hour. Notably, $375 per hour is high for an experienced lawyer in El Paso. Ex. G at ¶¶ 11–12.

*Third,* no lodestar multiplier is warranted in this case. There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (quotation and citation omitted). Courts routinely deny lodestar multipliers. *E.g., see Kinnison v. City of San Antonio*, No. 08-CV-421-XR, 2011 WL 1399094 at *5 (W.D. Tex. Apr. 12, 2011) ("the request to multiply the lodestar by 2.5 is denied"). To warrant a multiplier, there must be "exceptional" circumstances to justify it. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Plaintiffs' counsel bears "the burden of showing that such an adjustment is *necessary* to

9

the determination of a reasonable fee." *Dague*, 505 U.S. at 562 (citing *Blum v. Stenson*, 465 U.S. 886, 898, (1984)) (emphasis added by *Dague* court).  Plaintiffs' counsel has not met and cannot meet that burden.

The Motion cites *Garza v. Sporting Goods Properties, Inc.*, No. Civ. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996), and asserts that this Court "suggest[ed] that 'a standard risk multiplier of 2 should be used in all contingent fee arrangements.'"  Mot. at 21. But this Court was only noting that one decision from a different circuit opined that there should be such a "standard," whereas another district court alternatively suggested "a mathematical equation" to account for litigation risk.  *Garza*, 1996 WL 56247 at 32 (citing *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) and *In re McDonnell Douglas Equip. Leasing Secs. Litig.,* 842 F.Supp. 733, 741 (S.D.N.Y. 1994)).  This Court does not have any "standard" multiplier that must be used; rather, courts must consider the *Johnson* factors and adjust the lodestar accordingly.  *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) (listing a non-exhaustive list of factors that should be considered when determining the appropriate multiplier).  Given the context of this case, Western Refining respectfully submits that Plaintiffs' counsel are not entitled to any fee.

## CONCLUSION

For the reasons described above, Western Refining asks that this Court deny Plaintiffs' request for attorneys' fees.

Dated:  May 3, 2017	Respectfully submitted,

*/s/ Harrel L. Davis*
Harrel L. Davis III
Texas Bar No. 05567560
hdavis@eplawyers.com

**GORDON DAVIS JOHNSON & SHANE P.C.**
4695 N. Mesa Street
El Paso, Texas  79912
Tel:  (915) 545-1133
Fax: (915) 545-4433

Paul R. Bessette
Texas Bar No. 02263050
pbessette@kslaw.com

Jill R. Carvalho
Texas Bar No. 24087266
jcarvalho@kslaw.com

**KING & SPALDING LLP**
401 Congress Ave, Ste. 3200
Austin, TX  78701
Tel: (512) 457-2050
Fax: (512) 457-2100

*Counsel for Defendants Western Refining, Inc., Paul Foster, Sigmund Cornelius, Frederick Francis, Robert Hassler, Brian Hogan, Jeff Stevens, and Scott Weaver*

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 3, 2017, I electronically filed the foregoing notice with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class to all non-CM/ECF participants.

                                            */s/ Harrel L. Davis*
                                            Harrel L. Davis III